KARIN J. IMMERGUT, OSB #96314
United States Attorney
District of Oregon
WILLIAM E. FITZGERALD, OSB #91515
Assistant United States Attorney
701 High Street
Eugene, Oregon 97401
(541) 465-6771
bud.fitzgerald@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 05-60053-02-HO |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| v. | ) | |
| | ) | |
| GABRIEL DOYLE LASKEY, | ) | |
| | ) | |
| Defendant. | ) | |

    The United States of America, by and through Karin J. Immergut, United States Attorney for the District of Oregon, William E. Fitzgerald, Assistant United States Attorney and Criminal Section Attorney Roy Conn of the United States Department of Justice Civil Rights Division, hereby submits its Sentencing Memorandum in the above-captioned case.

PAGE 1 - GOVERNMENT'S SENTENCING MEMORANDUM

# I. BACKGROUND

On August 15, 2006, Defendant Laskey pled guilty to Counts 1 and 2 of the Second Superseding Indictment. The court accepted Defendant Laskey's guilty plea under Rule 11(c)(1)(B) and ordered a pre-sentence investigation report. There is no plea agreement in this case.

## A. Counts of Conviction

Count 1 charges beginning in or about October 2002, in the District of Oregon, Jacob Albert Laskey, Gabriel Doyle Laskey and Gerald Anthony Poundstone, who were self-avowed white supremacists who advocated the supremacy of white people over other races, separation of the races, and the oppression of Jewish, African American, and other ethnic and racial groups, willfully conspired and agreed with one another and others to injure, oppress, threaten, and intimidate Jewish persons in the free exercise and enjoyment of the rights secured to them by the Constitution and laws of the United States to use, hold and occupy real property in the same manner as is enjoyed by all citizens, without discrimination on account of race, in violation of 18 U.S.C. § 241.

Count 2 charges on or about October 25, 2002, in the District of Oregon, Jacob Albert Laskey, Gabriel Doyle Laskey, Gerald Anthony Poundstone and other persons known and unknown to the Grand Jury, intentionally defaced and damaged, and did attempt to deface and damage religious real property because of the ethnic characteristics of individuals associated with that religious property, by throwing rocks engraved with

Nazi swastikas and breaking windows of Temple Beth Israel, located at 2550 Portland Street, Eugene, Oregon, in violation of 18 U.S.C. § 247(c).

### B. Maximum Punishments

The Federal Criminal Code authorizes the following maximum sentences:

Count 1, Conspiracy Against Rights of Citizens, 18 U.S.C. § 241, Class C felony, 10 years imprisonment, $250,000 fine, 3 years of supervised release and a $100 special assessment.

Count 2, Damage to Religious Property, 18 U.S.C. § 247(c), Class C felony, 20 years imprisonment, $250,000 fine, 3 years of supervised release and a $100 special assessment.

## II. FACTS

On October 25, 2002, Gabriel Laskey accompanied his brother, Jacob Laskey, Gerald Poundstone, Jesse Baker and other persons known and unknown to the Grand Jury, in a vehicle driven by Jacob Laskey, to Temple Beth Israel in Eugene, Oregon. Jacob Laskey, Gerald Poundstone and Gabriel Laskey were white supremacists who advocated, among other things, the supremacy of white people over other races, separation of the races, and the oppression of Jewish, African American, and other ethnic and racial groups.

Gabriel Laskey has admitted that he willfully conspired with others to intimidate Jewish persons at the Temple Beth Israel by throwing rocks at the temple. Before the rocks were thrown, Gabriel Laskey and his co-conspirators agreed to engrave the rocks with Nazi

PAGE 3 - GOVERNMENT'S SENTENCING MEMORANDUM

swastikas. Gabriel Laskey and each of his co-conspirators then willfully and intentionally threw swastika-etched rocks at the temple, at a time when there were people inside the temple, and shattered two of the temple's windows.

### III.  BOOKER REQUIREMENTS

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." Booker, 543 U.S. at 245. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The sentence will be reviewed by the Court of Appeals for "unreasonableness." Id. at 264.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at 264.

The position of the United States is that, absent highly unusual circumstances, the

sentence in a criminal case should fall within the guideline range as determined by the Court. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In this case, as explained further below, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Moreover, the parties agree that a Guidelines calculated sentence is appropriate in this case. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range established by the following analysis

## IV. ADVISORY GUIDELINE CALCULATION

### A. Base Offense Level

The Government agrees with Probation's calculation of the advisory guideline range. Counts 1 and 2 will be grouped together, pursuant to U.S.S.G. § 3D1.2(a), because the charged conduct involved the same victim and acts.

### B. Offense Level Adjustments

Damage to Religious Property has a maximum statutory term of imprisonment of 20 years. Therefore, Defendant's base offense level is 7, pursuant to U.S.S.G. § 2B1.1. There were more than 50 victims present at the synagogue during the attack so the offense level is increased 4 levels to 11, pursuant to U.S.S.G. § 2B1.1(b)(2)(B). The swastika-etched rocks constituted dangerous weapons, resulting in a 3 level increase to offense level 14, pursuant to U.S.S.G. § 2B1.1(b)(12)(B). Finally, there is a 3 level enhancement for

hate crime victim, pursuant to U.S.S.G. § 3A1.1(a). This raises the offense level to 17. Acceptance of responsibility decreases the offense level to 14, pursuant to U.S.S.G. § 3E1.1.

## V. SENTENCING RECOMMENDATION

The final offense level of 14 and Criminal History Category I produces an advisory guideline range of 15 to 21 months imprisonment. The Government joins with Probation's recommendation of 15 months imprisonment.

The amount of pecuniary loss to Temple Beth Israel is $896.64. The Government recommends that Defendant be held liable for restitution in that amount, jointly and severally with his co-defendants.

DATED this 24th day of MAY, 2007.

>
> Respectfully submitted,
>
> KARIN J. IMMERGUT
> United States Attorney
>
> /s/ William E. Fitzgerald
> _____
> WILLIAM E. FITZGERALD
> Assistant United States Attorney